**FILED**

JAN 2 7 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: W.A.R. LLP | ) )  ) | Civil Action No. 11-1574 (RCL) |

### MEMORANDUM AND ORDER

Before the Court is the appeal of the joint-appellants, debtor W.A.R. LLP and insider-creditor Wade Robertson, from various decisions of the bankruptcy court *inter alia* overruling objections to the trustee's report of "no assets" for distribution and denying appellants' motion for sanctions against appellee William C. Cartinhour, Jr. Upon consideration of the parties' appellate briefs [12] [19] [21], the applicable law, and the entire record herein, the Court will affirm the decisions of the bankruptcy court.

### I.   BACKGROUND

The instant bankruptcy case and appeal is in essence a tangent to previous litigation in this district court between the founding partners of the debtor partnership W.A.R. LLP, Wade Robertson and William Cartinhour. Judge Ellen Huvelle entered judgment [165] in that litigation, *Robertson v. Cartinhour*, Civil No. 09-1642, on April 25, 2011, and there are still motions pending in that case. Robertson initiated that litigation on April 28, 2009, filing a complaint [1] against Cartinhour seeking a declaratory judgment that Cartinhour had agreed to hold Robertson harmless for any alleged claims the former might have against the latter related to the partnership. Cartinhour filed his answer [2] on October 28, 2009, and included counterclaims against Robertson. Cartinhour alleged that Robertson had fraudulently induced him to invest a total of $3.5 million in the partnership, which served as a vehicle for class action litigation, in return for a fixed percentage of the recovery obtained in that litigation. Robertson

1

initially invested $1 million, and although the litigation stalled and ultimately was dismissed, Robertson represented to Cartinhour that the merits of the case remained strong and persuaded Cartinhour to invest first another $1 million and then a third payment of $1.5 million. Cartinhour sought return of those funds from Robertson.

Cartinhour moved to amend his counter-complaint [45] on February 5, 2010. Cartinhour sought to allege additional facts following a January 11, 2010 hearing, particularly that Robertson had caused W.A.R. LLP to lend to Robertson at least $3,405,000 of the $3.5 million invested in the partnership by Cartinhour. Cartinhour thus sought to add a claim for a constructive trust over the diverted assets, and also sought to add a claim for dissolution of the partnership and for a receivership against W.A.R. LLP. Cartinhour dropped the latter two claims, involving the legal status of the partnership, by the time of the filing of the joint pre-trial statement [121], which does not include W.A.R. LLP as a party; the record further shows that the partnership did not make an appearance or file any responsive pleadings in the case before Judge Huvelle. Cartinhour filed the amended counterclaim [61] on February 22, 2010. On that same date, Cartinhour filed a motion for a temporary restraining order and preliminary injunction putting a freeze on the assets lent by W.A.R. LLP to Robertson. Judge Huvelle granted the motion by order [90] on March 26, 2010, and required transfer of the remaining funds to the clerk of the court for imposition of a constructive trust. Those funds ultimately included $600,074.92 from Robertson's personal brokerage account, $4,611.66 primarily from W.A.R. LLP's bank accounts, $20,713.75 held by counsel for Robertson, and $5,000.00 held by law firm Sutherland Asbill & Brennan. Robertson appealed that order [91] on March 28, 2010.

On November 9, 2010, Robertson filed suit in the Southern District of New York in *Robertson v. Cartinhour*, Civil No. 10-8442. This suit was styled as a civil RICO action but

involved the same factual dispute as the case before Judge Huvelle.   This suit prompted Cartinhour to file a motion for an injunction [128] against the institution of further suits by Robertson.  Judge Huvelle denied the motion by order [147] on December 30, 2010.  Although Judge Huvelle declined to impose a sweeping anti-filing injunction, Judge Huvelle noted in the order that between the institution of the instant suit and the date of the order, Robertson had engaged in a variety of frivolous filings:

> Robertson proceeded to file no less than fourteen motions, including a motion to reconsider an order granting Cartinhour leave to amend his counter-claims, a motion to quash a subpoena for documents that Robertson had already agreed to produce, and a motion to recuse.  Two of those motions were sufficiently meritless, and were considered by the Court to have been filed recklessly and in bad faith, so as to justify the award of attorney's fees against Robertson under 28 U.S.C. § 1927, which permits the award of fees "against an attorney who frustrates the progress of judicial proceedings."
>
> The Court of Appeals has been equally frustrated by Robertson's vexatious litigation strategy, finding sanctions to be "abundantly justified" after Robertson filed his fourth motion to stay despite being warned, less than a week earlier, that the Court "looks with extreme disfavor upon unnecessary pleadings." . . . Prior to imposing those sanctions, the Circuit Court had summarily denied Robertson's motion for disqualification and sanctions against Cartinhour's counsel; Robertson's petition for mandamus seeking recusal; Robertson's motion for clarification and reconsideration, where the Court explicitly warned him that it "will not hesitate to impose sanctions" . . .; Robertson's emergency motion to stay a preliminary injunction; and Robertson's motion for sanctions and a stay, noting, *inter alia*, that certain orders of the district court were unappealable.
>
> In addition to the flurry of appellate activity and the sanctions imposed to date, this Court has had to rule on endless motions for recusal, motions to stay, motions for reconsideration, and motions to quash.
>
> . . .
>
> The Court . . . warns Robertson, as did the Court of Appeals, that if he should continue to pursue his strategy of unnecessarily proliferating this litigation, this Court will not hesitate to entertain a renewed motion for an injunction.

(internal citations and modifications omitted). Less than one week after Cartinhour filed his motion for an injunction, an outside W.A.R. LLP creditor filed an involuntary Chapter 7 bankruptcy petition in the Western District of Tennessee against W.A.R. LLP—the genesis of the suit subject to the instant appeal.

Following institution of the Tennessee bankruptcy proceeding, Judge Huvelle held a hearing [182] on November 19, 2010 regarding the effect of that proceeding on the suit in light of the automatic bankruptcy stay, *see* 18 U.S.C. § 362(a)(1) (providing for an automatic stay over actions "to obtain possession of or to exercise control over property of the bankruptcy estate"). Judge Huvelle during the hearing ruled that the case could go forward:

> "362 Section (a)(1) does not stay claims against Robertson because he is not the debtor. Rather, W.A.R. is the debtor and Robertson's status as a partner of the partnership does not entitle him to protections of the automatic stay. . . . But to avoid any interference whatsoever with the jurisdiction of the Bankruptcy Court, I specifically direct that any ruling on Mr. Cartinhour's rescission and dissolution claims will not be binding on the estate of the partnership in the partnership's bankruptcy case.
> . . .
> Finally [Cartinhour] has abandoned any claims I should note that might be subject to the automatic stay including the derivative claims on behalf of the partnership, constructive trust on the 4,000 in the registry.[1]
> That was the only amount of money that was transferred out of the partnership account as opposed to all the other amounts that are in the registry right now, with the exception of this 4,000, came out of his personal accounts with Schwab, Mr. Robertson's personal accounts. And Mr. Cartinhour is giving up the appointment of a receiver against the partnership so that such appointment would not be subject to the automatic stay.
> . . .
> I have ruled loud and clear that the automatic stay does not interfere with us proceeding in this fashion.

---

[1] This refers to $4,611.66 placed in the constructive trust that came not from Robertson's accounts but from the partnership's bank account. Cartinhour has abandoned any claim to those specific funds.

After Judge Huvelle's ruling, the debtor in the Tennessee case filed a motion on November 22, 2010 for a temporary restraining order and for a preliminary injunction to enforce the automatic bankruptcy stay and restrain further proceedings in Judge Huvelle's case; Cartinhour in turn filed a motion for relief in the Tennessee case from the automatic bankruptcy stay.   Judge Paulette J. Delk of the Tennessee bankruptcy court entered an order on November 23, 2010 denying the debtor's motion and granting Cartinhour's motion.   Judge Delk ruled in accord with Judge Huvelle that "the automatic stay does not prevent the D.C. lawsuit from going forward, because neither the debtor nor property of the estate will be affected by the trial."   Since the D.C. lawsuit involved a dispute between Robertson and Cartinhour that did not implicate partnership property, the automatic stay did not apply to that case.   However, "[o]ut of an abundance of caution," Judge Delk "expressly" found that "sufficient cause exists under 11 U.S.C. § 362(d)(1) to modify the stay to permit the D.C. lawsuit to go forward."   Thus, even if the D.C. lawsuit did implicate partnership property, Judge Delk granted Cartinhour relief from the automatic stay to continue prosecution of the suit in front of Judge Huvelle.

Cartinhour filed a motion to dismiss, or abstain in, the bankruptcy case in Tennessee, or to transfer venue to the District of Columbia, on December 3, 2010.   The Tennessee court granted the motion and transferred the case to the District of Columbia on January 4, 2011. Robertson would later file a motion to withdraw the bankruptcy reference.   The motion appears in the bankruptcy court record on January 24, 2011, and was transmitted to this Court as Misc. No. 11-283 on May 17, 2011; this Court denied that motion by Order [11] on June 6, 2011.

The bankruptcy trustee conducted a meeting of the creditors on March 24, 2011 and filed a report of no distribution on March 30, 2011, finding that there was "no property available for distribution from the estate."   The debtor and Robertson both filed objections to that report, and

5

Cartinhour opposed those objections. Outside creditor Ray Connolly filed several motions on May 10, 2011 relating to Cartinhour's alleged violations of the automatic bankruptcy stay, which bankruptcy court Judge Martin Teel denied by order [165] and memorandum [164] on June 20, 2011. Judge Teel by preliminary order and memorandum[2] [171] on June 23, 2011 (amended [172] that same day) and final order [210] and memorandum [209] on July 11, 2011 overruled the objections to the trustee's report of no distribution, and through separate order [213] closed the bankruptcy case and discharged the trustee.[3] It is these myriad orders that are the subject of the instant appeal.[4]

Meanwhile, in the original declaratory judgment action in front of Judge Huvelle, the Court of Appeals was adjudicating Robertson's appeal of the constructive trust. The Court of Appeals issued an order [148] on January 20, 2011 requesting clarification as to why Judge Huvelle granted the preliminary injunction. Judge Huvelle issued a response [150] on February 3, 2011 describing in greater particularity the necessity and legal propriety of imposing a constructive trust over the remaining funds traceable to Cartinhour's investment in Robertson's control. The Court of Appeals would eventually affirm [191] the entrance of the preliminary injunction post-judgment.

Trial commenced on Cartinhour's various claims against Robertson on February 8, 2011. The jury returned a verdict for Cartinhour on February 18, 2011 in the amount of $3.5 million in

---

[2] The initial order noted the bankruptcy court's preliminary determination that the trustee was within his authority to determine that the amount of money remaining in the estate—$4,611.66—was insufficient to warrant distribution, but provided the parties further opportunity to renew their objections by filing supplemental memoranda. The final order noted that no party filed a supplemental memorandum, and thus that no party objected to a determination of no distribution.

[3] The bankruptcy court immediately reopened the case by order [214] to resolve sanctions issues, and pending appeal.

[4] Creditor Ray Connolly also took an appeal to this Court in Civil No. 11-1349, which was dismissed by this Court [9] on September 30, 2011 by the parties' consent.

compensatory damages and $3.5 million in punitive damages for Robertson's breach of fiduciary duty as business partner and for his legal malpractice. Judge Huvelle entered judgment on February 25, 2011. Cartinhour filed a motion [183] for release of the funds held in the constructive trust on May 10, 2011. In his motion, Cartinhour did not seek release of the $4,611.66 that was held in a W.A.R. LLP bank account before its transfer into the court's registry, pending further action in the bankruptcy case. Following the Court of Appeals' issuance of its mandate affirming Judge Huvelle's preliminary injunction, Judge Huvelle on July 19, 2011 granted Cartinhour's motion for release of funds, save for the $4,611.66. Cartinhour filed a motion [224] for release of those remaining funds on December 16, 2011, and Robertson filed a motion on behalf of W.A.R. LLP seeking release of those remaining funds to W.A.R. LLP on December 30, 2011. Those motions are still pending before Judge Huvelle.

## II.   DISCUSSION

Although a number of orders of the bankruptcy court are presently on appeal, this case centers on a single issue: Did W.A.R. LLP retain a property interest in the money held in the court's registry (save the $4,611.66 transferred from the partnership's own bank account)? If so, Robertson posits, the bankruptcy court erred both in overruling objections to the trustee's report of no distribution, and in determining that Cartinhour and his attorneys did not violate the automatic bankruptcy stay. The Court reviews the bankruptcy court's determination of this issue *de novo, see Essex Ins. Co. v. Doe*, 511 F.3d 198, 200 (D.C. Cir. 2008).

The money placed in the court's registry in dispute here was money held by Robertson in his own bank accounts. This money is traceable to unsecured loans made by W.A.R. LLP to Robertson in exchange for promissory notes in which Robertson agreed to pay back the money with no interest over an extended period of time. The funds for those loans are in turn directly

7

traceable to the investments made by Cartinhour in the partnership. Once Robertson executed those loans on behalf of the partnership, the following transaction ensued: W.A.R. LLP provided Robertson in his personal capacity with $3.405 million in cash, in exchange for promissory notes, signed by Robertson, in which Robertson agreed to repay the principal without interest over a set time frame. Following that transaction, Robertson had sole ownership over the $3.405 million in cash, and W.A.R. LLP retained ownership of the promissory notes signed by Robertson.

In his appellate brief, Cartinhour makes this point, and writes that "[t]he proposition that an unsecured loan based upon a promissory note does not reserve to the Lender any property right in the cash defies citation because it is so fundamental." Surprisingly so. If person A offers to pay $500 for person B's computer, and both parties effectuate that sale, then person A has a legal interest in the computer but not the $500, and person A has a legal interest in the $500 but not the computer. So too with negotiable instruments, absent a security interest. If person A pays person B $3.405 million for unsecured promissory notes signed by person B, person A relinquishes interest in the cash in exchange for the unsecured notes, and person B binds himself by the terms of those unsecured notes in exchange for the cash. No longer does person A have a property interest in the cash. What person A has is a property interest in an unsecured negotiable instrument. Such is exactly what occurred here. After execution of the loans, the cash fell under Robertson's sole ownership, which is fully apparent in Robertson's possession of those funds (or, at least, what remained thereof) in his personal bank account. By obtaining Robertson's unsecured promissory notes, W.A.R. LLP relinquished its interest in the cash provided in return. *Cf.* D.C. Code § 28:9-312(b)(3) ("A security interest in money may be perfected only by the secured party's taking possession under § 28:9-313); Bradley Clark, <u>The Law of Secured</u>

Transactions Under the Uniform Commercial Code ¶ 7.2 (1980) (discussing Uniform Commercial Code and noting that "it is clear that a security interest in money can be perfected only by possession").

With this basic understanding of negotiable instruments, it is evident that the bankruptcy court was correct in determining that the deposits of $600,074.92, $20,713.15, and $5,000— which derived from these loans to Robertson and were transferred from accounts under Robertson's control—were not part of the debtor estate of W.A.R. LLP. The bankruptcy court was therefore further correct in sustaining the trustee's report of no distribution, since the only funds remaining in W.A.R. LLP's control were the $4,611.66 left in W.A.R. LLP's own bank account—a sum the trustee appropriately determined was too small to warrant the expenses of distribution. *See* 18 U.S.C. § 554(a) (permitting abandonment of property "that is of inconsequential value"); *see also, e.g.*, *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (noting that "discretion applies when the Trustee makes a determination that assets of the estate should be abandoned"); *In re Fulton*, 162 B.R. 539, 540 (Bankr. W.D. Mo. 1993) (placing only a good faith business judgment restriction on trustee's authority to abandon property).

The appellants' attempt to fabricate some form of legal interest held by W.A.R. LLP in the non-W.A.R. portion of the assets in the court's registry fails. First, the appellants assert that W.A.R. LLP retained a contingent property interest in those funds because the partnership was a party to the proceedings. But W.A.R. LLP emphatically was *not* a party to those proceedings. The case was styled *Robertson v. Cartinhour*. It involved claims by Robertson against Cartinhour, and vice versa. Judgment was ultimately rendered against Robertson. Although Cartinhour initially alleged derivative claims on behalf of W.A.R. LLP, and pressed claims for

9

dissolution, Cartinhour either abandoned those claims prior to the institution of the bankruptcy proceedings in Tennessee, or Judge Huvelle made explicit on the record that she would not rule with respect to those claims in a way that would affect those proceedings. It does not appear that W.A.R. LLP ever entered an appearance or filed a responsive pleading or motion in the action before Judge Huvelle. W.A.R. LLP was wholly absent from the litigation and certainly was not represented therein. It thus could not have developed a contingent interest in those funds solely because the court established a constructive trust.[5]

In addition, the appellants argue that W.A.R. LLP held a direct, non-contingent interest in the funds in Robertson's account. The appellants principally cite to *In re Don/Mark P'ship*, 14 B.R. 830 (D. Colo. 1981), for the proposition that property for which a partner holds legal title may still be considered partnership property. Elemental partnership law verifies this simple statement. Under D.C. Code § 29-603.04, "Property shall be presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership . . . ." So, as in *In re Don/Mark P'ship*, if a partner or partners purchase real property under his or their names with partnership funds, a court may still consider that real property to be owned by the partnership. And so, here, W.A.R. LLP purchased with its assets promissory notes signed

---

[5] Even if W.A.R. LLP were a party to that suit, it would be bizarre to assume that the court's sequestering of funds held by Robertson in his bank account would suddenly create for W.A.R. LLP a property interest in those funds. The appellants cite *Booth v. Clark* for the proposition that a receiver "is appointed for the benefit of all parties who may establish rights in the cause. The money is in [the receiver's] hands in custodia legis for whoever can make out a title to it." 58 U.S. 322, 331 (1854). But the appellants fail to assert even a *prima facie* claim that could be made on behalf of W.A.R. LLP for those funds. *Cf. Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1156-57 (2d Cir. 1994) (finding standing on part of wife to challenge forfeiture of husband's certificate of deposit where wife alleged she was the beneficial owner of a constructive trust over those funds). Without such a claim to the proceeds of those funds, W.A.R. LLP cannot allege any basis by which it has a contingent interest in those funds; even assuming its appearance in the litigation, that alone could not suffice to create such an interest. To further illustrate, imagine that Cartinhour had requested a pre-judgment attachment of funds from a separate bank account owned by Robertson funded through sources wholly unrelated to W.A.R. LLP It would defy logic to assume that the court's granting of a pre-judgment attachment of those funds created a contingent property interest on the part of W.A.R. LLP in those funds.

by Robertson that are indisputably partnership property.  But the assets used to purchase those notes are no longer partnership property.  They are Robertson's property, and W.A.R. retains in them no property interest.

At no time following the loan transactions between Robertson and W.A.R. LLP did W.A.R. LLP enjoy an interest in the funds held personally by Robertson that were transferred by order of Judge Huvelle into the constructive trust.  Judge Teel therefore appropriately determined that the trustee's report of no distribution was correct.  Further, because W.A.R. LLP lacked any claim to the funds in the court's registry—aside from the $4,611.66 that Cartinhour in essence concedes is property of the estate—Judge Huvelle, Judge Delk, and Judge Teel all appropriately determined that the proceedings before Judge Huvelle did not violate the automatic stay. Furthermore, Judge Delk granted in the alternative a modification of the stay for the purposes of those proceedings.  Judge Teel was therefore correct in declining to impose sanctions for a purported violation of the stay and in taking other related actions complained of in this appeal.

III.   **CONCLUSION**

Notwithstanding the uncontested $4,611.66, W.A.R. LLP lacked any interest in the funds held in the court's registry in the case before Judge Huvelle.  Accordingly, this Court finds no legal error in the decisions of the bankruptcy court on appeal here.  It is therefore hereby

**ORDERED** that the decisions of the bankruptcy court are **AFFIRMED**.

**SO ORDERED** this _27th_ day of January 2012.

ROYCE C. LAMBERTH
Chief Judge
United States District Court

11